Here is the next case on the calendar, Tanvir v. Tanzen. We'll wait for the court to clear and insist. Excuse me. Another group is coming in. Please begin. Tanvir v. Comey If we go back to the pre-employment division case, would you still be able to make the argument that you're making? Because if you look at what was pre-employment, it's not clear that you can assert that there is this capacity for suits against individuals in their individual capacity. Because if we look at what the Supreme Court did, Congress passed a law. If we go look at the pre-congressional action, the pre-Supreme Court action, and even the pre-Supreme Court action or the pre-congressional action, it's not clear that there are these suits in individual capacity. Your Honor, prior to Smith, the outcome that we're advocating here, Your Honor, is certainly consistent with the Supreme Court's pre-Smith jurisprudence. Prior to Smith, it was possible to a number of courts assumed that free exercise remedies, for example, under Bivens, were available. We've cited to some of these cases in our briefs, cases like Jihad v. O'Brien. There is a case that we actually did not cite in our briefs, Dellums v. Powell. It's a D.C. Circuit case from 1977 that actually awarded damages against a federal officer under Bivens for a First Amendment violation. The time Congress acted here, that was before the Supreme Court shut down Bivens. That's correct, Your Honor, but there's a really important point here, and I'm glad you raised the question, Judge Lynch. We are not in a Bivens universe. Courts have very consistently distinguished Bivens cases from cases where Congress has provided a cause of action, and that's for a very simple reason. Bivens is a universe where the cause of action itself is entirely judicially constructed. It was implied, the cause of action was implied by the courts. We are in a world that is more closely akin to 1983. We have a congressionally provided cause of action in RFRA. What's more, Congress provided for a remedy of appropriate relief. Did Congress say that its purpose was to restore everything to the status quo ante smith? Your Honor, Congress's purpose in passing RFRA was twofold. The first part of that purpose, of course, was to restore the pre-Smith jurisprudence. To restore the compelling interest test. That is absolutely correct, Your Honor. Congress could have said our purpose here is to make things exactly like they were the day before Smith was decided, but it didn't say that, did it? That's correct, Your Honor. Congress did not say that. What Congress said was we want to restore things to the pre-Smith world, and we want to provide a claim. The Supreme Court, since RFRA was passed in 1993, on two occasions has stated very plainly that what Congress actually did with RFRA was to provide even broader protection for religious liberty than was available pre-Smith. Those two decisions are City of Bern. Didn't they also say that in Hobby Lobby? That it's broader? That is absolutely correct, Your Honor. It was City of Bern in 1997, and in Hobby Lobby in 2014, they said RFRA did more than merely restore the balancing test used in the Sherbert line of cases. It provided even broader protection for religious liberty. So Congress here has very clearly created a free exercise cause of action. But with respect to Smith itself, it didn't do anything, did it, to alter the standard for establishing impermissibly discriminatory conduct on the basis of religion? Your Honor, I think one way perhaps to approach the question is to think about the different possible options that Congress had in passing RFRA. And I guess Congress had four options. It could have created a cause of action. Sorry, it could have refrained from creating a cause of action at all and left the work to 1983 and to Bivens. That's option one. Option two would have been for it to create a cause of action and limit it to injunctive relief explicitly. That's option two. Option three would have been to do, I guess, what it did here, create the cause of action and remain silent or ambiguous as to the scope of the appropriate remedies. And then option four would have been for Congress to be explicit and provide far more explicitly for monetary relief as damages. Now, if Congress's intention was as the defendants contend, then Congress would have gone for options one or two, I suppose. But Congress did not do that. Instead, Congress used under color of law language. That brings in 1983 jurisprudence. And then I guess that leaves the only question, which is at the heart of this case, why was Congress not more explicit? And it's the question that's centrally raised by the defendants in their brief. Why did Congress not opt for option four? Why did Congress not just say that it wanted to? What's your answer to that question? Well, Your Honor, the answer is very simple. We believe that with RFRA, Congress actually found the most elegant solution to a complicated problem. If Congress had gone with option four, then that would have raised a host of complications. There is a patchwork of different defendants with different issues here, federal sovereign immunity issues, state sovereign immunity issues, because, you know, at the time of RFRA's passage, the intent was to reach the states. Commerce clause versus spending clause issues. So the only way for Congress to legislate effectively in this area was to adopt, as Sossaman put it, an open-ended and context-dependent phrase like appropriate relief in the wake of Franklin, knowing full well that if it doesn't exclude damages, they are available under Franklin. If it doesn't explicitly waive sovereign immunity, as Sossaman held, then the states are out of reach and the federal government is out of reach. And Congress left to the courts the job of determining what is appropriate relief in particular contexts. So I'm still having some trouble. You can please help me. RFRA's purpose, generally speaking, was to restore the substantial burden test for government policies and customs prior to Smith. I'm sorry, Your Honor, I didn't hear you. If you look at RFRA's purpose, it seems that its purpose was to restore the substantial burden test for governmental policies and customs prior to Smith. Would you agree with that? I would agree with that, and I would add, and also to provide a claim to persons aggrieved. And, I mean, ultra-virus liability was not, for example, an issue in Smith, right? That is correct, Your Honor, I believe. So RFRA is really getting to policy issues. How does it leave you with the argument that there are suits in individual capacity when what RFRA was doing was trying to restore the substantial burden test? Well, Your Honor, in two ways. Through its use of appropriate relief as a phrase and through its incorporation of persons acting under color of law. Both of these get us to individual capacity damages. Appropriate relief under Franklin and official or other person acting under a color of law because under this circuit's precedent, Leonard v. Israel Discount Bank, for example, when Congress uses language from another statute, then we have to presume that it intended to incorporate the judicial interpretations of those terms. And under color of law, at the time of Riffra's passage, under 1983, it was possible to sue not only state officials but also federal officers acting in collusion with state officers to violate certain rights. And also there was lower court authority, at least, that federal officers could be sued under Bivens. The Supreme Court hadn't spoken on that, but lower courts had. That's absolutely right, Judge Lynch. And the Supreme Court had not foreclosed, had not shut the door on this species of relief. And as you've said, there were a number of lower courts, including courts of appeals, that assumed the availability of this sort of relief. Has there ever been a Bivens remedy for a free exercise violation? Your Honor, no. But, I mean, there are a number of courts that assumed  like Jihad v. O'Brien in the Sixth Circuit. But I'd like to go back to my point that we are not, this Court is not in a Bivens-type exercise. We have a congressionally provided cause of action. And so the considerations that would normally counsel caution, judicial caution, when it comes to extending a Bivens form of relief simply do not apply in the setting where you have a statute that is explicit as to the cause of action and explicit as to the provision of appropriate relief. You say that, and it interests me that you say that, because didn't you earlier say that Congress essentially delegated to the courts deciding what is appropriate relief, that it's sort of punted? And if that's true, then aren't we in a position where we have to make some determinations of what is appropriate? That's correct, Your Honor, but that's no different from what the Court did, for example, in Sossaman, or what this Court did in Washington v. Gagne. In Sossaman, the Supreme Court said, well, as against a sovereign, because RFRA is not explicit enough in piercing sovereign immunity, appropriate relief does not allow for damages. That's what the Supreme Court did in Sossaman. And this Court in Washington v. Gagne did the same thing, analyzing the reach of RLUIPA, stemming from Congress's spending clause powers, avoiding the constitutional question and saying, well, we're not going to allow for RLUIPA to reach individual state defendants because they're not recipients of funds. Your position, because I thought you were saying that by using the language appropriate relief, Congress was essentially answering the question about damages because it used the precise language that the Supreme Court had used in Franklin for an implied cause of action, that when it implies a cause of action, that ordinarily damages would be there because when a cause of action is implied, all appropriate relief is available. Then Congress comes along and creates a cause of action for appropriate relief using the same terms. I thought your position was there's nothing for us to answer. That sounds different than the answer there is something for us to answer. We get to decide what's appropriate in this context or not. Well, thank you, Judge Luz. Let me try to be more clear. It's like there's a matrix here. This particular case, we believe, is clear under Franklin because it involves individual capacity defendants. The statute provides for appropriate relief. Franklin and Sussman, in fact, taken together, say that where there are no sovereign immunity issues, and there are none here, appropriate relief is to be construed to include any and all relief, including money damages. So this case is clear where the court retains its flexibility and why we believe that the solution that Congress found was particularly neat and flexible and adaptive is that the term appropriate relief allows the court in a different part of the matrix, in a different quadrant. For example, a case that would raise federal sovereign immunity issues, a case that would raise spending clause issues like Washington v. Gagne, or a case that would raise commerce clause issues like the Abu Dhabi case in the District of Connecticut. The courts retain flexibility in those sorts of cases that are in a very different quadrant of the matrix than ours. Our case is very clear, and in fact, we're in an even better position than the parties in Franklin because Franklin comes in the wake of Cannon. Cannon had read in a cause of action into Title VI. Franklin comes in and decides, well, what is the scope of relief? We have a statute here that, unlike Title VI, provides a cause of action. Unlike Title VI, provides clearly for appropriate relief. The only question for this court is what is the scope of that relief, and that question is answered in this case involving an individual capacity defendant by Franklin. And if you look to under color of law language in the statute itself, the inclusion of that language is not gratuitous. Congress has to be assumed to have known what it was doing when it used the terms appropriate relief, when it used the terms under color of law. It built into the statute the judicial constructions of those terms. If Ripper's purpose was to restore the substantial burden test, walk me through this. Yes, sir. How would an officer sued in an individual capacity defend the behavior if acting in accordance with a governmental policy or custom? In other words, how would the officer know whether the government had a compelling interest and used the least restrictive means to possibly implement it? Your Honor, that is a question for a later day. We believe that if this court were to agree with us, in this case were to be remanded, the individual defendants in this case, who we have alleged very clearly were acting ultraviolet . . . substantially burdening the exercise of their Islamic faith, trying to coerce them into becoming informants. But the defendants will have an opportunity to raise qualified immunity defenses. They'll have an opportunity to argue that the government interest was a compelling government interest. They'll have all manner of defenses available to them on remand. And whatever happens at that stage is a completely different question that is not before the court right now. Are you concerned at all that the qualified immunity test would possibly protect most actions taken by officers because you would have any number of unique situations where there hadn't been a prior adjudication? Is that a concern as a practical matter? Well, Your Honor, we did brief and argue the qualified immunity issues below. The court did not rule on those issues, so they were not raised on appeal. Even if the concern that's being raised by Your Honor were true, and Chief Judge Katzmann, I agree. I believe that the qualified immunity issue is a complex issue. But even then, there's some value in this litigation moving forward because that takes us one step towards establishing the law so that future defendants, future agents, will know not to overstep in the way that these individual defendants overstepped, abusing their authority to place individuals on the no-fly list in order to coerce them into informancy. So even in that event, should we on remand fail against a qualified immunity defense, there's still significant value in advancing the statute's purpose through allowing the litigation to move forward past this stage. I haven't researched this, and I have no view, but I was wondering if you did, whether the Federal Tort Claims Act would provide any avenue for your clients. It's a really good question, Your Honor. I'm not sure I know the answer to that, but I will say this. That's the sort of inquiry that would be appropriate had this been a Bivens case. Had this been a Bivens case, this court would be asking, is there some kind of alternative remedial scheme? But, again, we're not in a Bivens universe here. We have a statute that provides for relief. We have a statute that provides a cause of action. The sorts of precautions that this court would need to take before extending a judicially constructed remedy simply do not apply in the case at hand where you have a statute and your task is a very limited and, in our view, straightforward one. Even if you have, and you don't have to comment on this, huge qualified immunity problems, there presumably would be cases where someone does act entirely inappropriately, and if we were to decide there is no cause of action, that would govern that case as well. Qualified immunity is a defense, and it saves a lot of defendants in 1983 cases, but that doesn't mean 1983 is not of value in the cases where qualified immunity doesn't apply. Absolutely, Judge Lynch. Thank you. May it please the Court. My name is Ellen Blain. I'm from the U.S. Attorney's Office in the Southern District of New York, and I represent the defendants in this case. Your Honor, precisely because we have a statute here, we need to look to Congress's intent in passing the statute in 1993. And here, what do we have? We have Congress providing for, quote, appropriate relief against a government. This stands in contrast to 1983, on which my colleague so heavily relies. 1983 says nothing about a government, but only says you can get damages against a person. But Congress defined government, right, to include persons. It defines government to include an official or other person acting under color of law. So I don't see where government comes into play, because you would substitute the definition for the defined term and say it's an action to obtain appropriate relief against an official or other person acting under color of law, right? Your Honor, it's for two reasons. Number one, in 1983, Congress only used the term person and did not otherwise use indices like. Right, because Congress here was trying to reach even more broadly and to provide a cause of action against the government itself. It failed because it was not specific enough, or maybe it didn't perceive the sovereign immunity issues. It didn't actually go that one step further and waive sovereign immunity. But I don't see why the fact that Congress intended to go even beyond and do something that turned out to be unconstitutional for it to do in providing a remedy means that we shouldn't take seriously what it said it was doing with respect to officials and other persons acting under color of law. So two reasons again, Your Honor. One is because Congress was looking at restoring, as Judge Katzmann was pointing out, the compelling interest standard to laws. Yeah, why do you say that? Because, I'm sorry. Is that something from the legislative history that you're relying on? So it's actually in the statute, 2000BB sub B, which is the purpose of RFRA was, quote, to restore the compelling interest test as set forth in Sherbet v. Verner and Wisconsin v. Yoder and to guarantee its application in all cases where free exercise of religion is substantially burdened. Yes, then what's the next word after what you read? And to provide a remedy. And is the next word. It had another purpose, right? Yes, yes. And does that purpose, the second purpose, use the word restore? No, that is also. It says instead we are going to provide a claim or defense. Does that speak at all in terms of restoring a status quo ante? It doesn't. It clearly is providing something new, a claim or defense. Something new. Yes, but. So excuse me then. So just explain to me why you say that Congress's overriding exclusive purpose that should govern all of our interpretation of the rest of the statute stop at one of the two purposes that Congress explicitly said were its purpose. Oh, Your Honor, I'm sorry. To be clear, I don't urge the Court in any way to stop its analysis at part one of the compelling interest test or the purpose of RFRA. Instead, when the Court looks at what does Congress mean by claim or defense to a government that is substantially burdening someone's religious exercise and the legislative history makes clear that Congress is not saying anything about remedies. It says a lot about the compelling interest test. Before we get to the legislative history, don't we have to find some ambiguity in the language? What we've got here is a purpose to provide a claim to persons whose religious exercise is substantially burdened. And when you say against a government again, we're substituting how they defined government, a cause of action against officials or other persons acting under color of law, and it said what that claim is for. It's for appropriate relief, which the Supreme Court just a year or two before had said is how, even when the Court is making up an implied cause of action that Congress didn't provide, we assume it means appropriate relief, all appropriate relief, and appropriate relief includes damages. So why are we trumping all of that with the fact that there was some earlier committee report that said our primary goal here, which I'm sure it was, is to restore Sherbert against Verner rather than Employment Division against Smith. They did more than that. So first, at 2000BB-1 subpart C, Congress does say that a person may assert that a violation of RFRA as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Congress, of course, then goes on to define government as a list of entities that clearly refer to a sovereign as well as then an official or other person acting under color of law. And the question for this Court is what did Congress mean by using the word official or other person acting under color of law? It didn't mean an official or a person acting under color of law? It could, but those terms in and of themselves don't always indicate monetary damages, and that's for a few. Well, those terms don't. Appropriate relief does. Well, appropriate relief, Your Honor, the court in Sossaman, and this court again in Washington v. Guinea, I hope I'm pronouncing that right, held that appropriate relief is inherently ambiguous and context-dependent, and so found that in the context of sovereign immunity or in the context of state immunity, that did not indicate a clear intent to waive immunity. Right. Now, appropriate relief is therefore has been held to be ambiguous. So when evaluating whether or not that phrase creates individual capacity claims for money damages. With all respect, I mean, in Sossaman, the issue was not does it intend damages, because it sort of I think it does, but anyway, it was if it does include damages, does it waive sovereign immunity to permit damages against the government? And that's a rather special thing. And the court concluded that Congress had not met the clear statement test that's required to do that. Is there any clear statement test that's required before Congress creates a cause of action among individuals? Well, in every other statute in which there is an individual capacity claim for money damages, Congress is explicit. That's in 1985. That's in 1981A. That's in the Federal Wiretapped Act. That's in FISA. That's in the Federal Telecommunications Act. That's in an act dealing with racketeering. That's an act dealing with patent infringement. And in every single one of those statutes, the only statutes besides 1983, which again is not a cause of action against Federal officials, of course, but that's those are the only statutes in which Congress has explicitly provided money damages against individual Federal employees acting in their personal capacities, and that's vital because Congress and the Court, I should say the Court, the Supreme Court has repeatedly cautioned against creating remedies against individual officials. They've cautioned, as Mr. Kassem suggested, they've cautioned against our implying such things or creating such things. Have they cautioned against Congress creating such things? Well, the principle is the same. The principle is this Court has to evaluate what does appropriate relief mean. And because the statute is not clear and the Supreme Court has held that that phrase is not clear, then the Court needs to evaluate did Congress intend to include damages because it's not obvious in the text. The text nowhere says damages. I understand that argument that we have to determine what Congress meant. That's different than the sort of free-floating policy sort of argument that you're making. Well, Your Honor, I'm sorry to call, you know, because simply because those cases were evaluated under the Bivens rubric doesn't mean that the principle doesn't still apply. And the principle that applies is that there is a, quote, substantial societal cost to recognizing or creating individual causes of action against Federal employees who act on the public's behalf. Right. It comes back to what was Congress's intention because Congress is the appropriate body to weigh those issues. Yes. So when Congress intends to create individual capacity claims, it does so by using language like action at law, damages, defines person. But in 1983, there was a division at the time that 1983 was enacted, not in 1983. In 1866 or 1867, there was a division between law and equity. So, Your Honor, correct. In 1871, actually, when 1983, the precursor was passed, there was a division. But there still remains today a division between damages and equitable relief. And that's exactly what 1983 highlighted. Why does appropriate relief authorize only equitable relief, which is a more extraordinary remedy most of the time? Damages is the ordinary remedy when someone is given a claim for essentially tortious conduct. Three reasons, Your Honor. And Alexander, the Supreme Court said that has long ago abandoned the practice of looking beyond Congress's intent and creating a remedy wherever there is a congressionally created right. So— I'm sorry. I didn't—I don't get that. We're not talking about creating remedies. We're talking about interpreting what Congress means when it says appropriate relief. And I'm suggesting to you that it is odd to interpret appropriate relief as meaning only equitable relief when equitable relief is the unusual remedy, not the usual remedy. Understood, Your Honor. The point I was getting at is really twofold. Number one, the Court in Sossaman and this Court and every other circuit to have looked at the phrase appropriate relief against a government, and whatever context it was evaluating it, every single court has held as a matter of statutory interpretation that phrase is ambiguous and doesn't necessarily mean money damages. Number two— Has any court ever in any statute that uses the term appropriate relief held that it does not include money damages? Your Honor, I'm not aware of any other statute using the phrase appropriate relief. And specifically for RFRA and RLUIPA, if this Court were to find that appropriate relief could mean money damages when applied against individual federal employees—and I think this is crucial—that class of defendant would be the only defendant that could be held liable for money damages for a RFRA or RLUIPA violation. Because there are constitutional obstacles to sovereign immunity, which takes out the categories of governments as such or individuals acting in their official capacities, and Congress—it was unconstitutional for Congress to reach state officials under the spending power, which is what they wound up with in RLUIPA because there were constitutional problems with this. But I'm having trouble understanding why if Congress intends to—it's not a question of who's left. It's a question of what did Congress mean. Congress meant to have damages against all those people, and they were blocked because they exceeded their authority. But would they have exceeded their authority in creating a cause of action for damages against federal officials? No, Your Honor. If they had actually explicitly said you can sue an individual federal employee in an action at law, to bar 1983, or in any other statute where Congress has more recently created a right of action and a remedy in this way, for damages or penalties, compensatory damages, that would have been clear. Congress's intent would have been clear, and we wouldn't be here today. But Congress didn't say that. Nowhere in the text does it say damages. Nowhere in the text does it say individual capacity. It says appropriate. It says appropriate relief. Isn't the default meaning of appropriate relief includes damages? And you have any number of statutes, don't you, which in a sense make that point by specifically excluding monetary damages. So, for instance, you've got the Administrative Procedure Act, which provides for relief other than money damages. Well, the Administrative Procedure Act, Your Honor, is an act against an agency action. It does not provide for a cause of action against individual federal officials for somehow violating an agency's process or the Constitution's requirements under whatever agency reg we're evaluating. And every action, and I'm going to point the Court to 1985, the Wiretapped Act, FISA, Telecommunications Act, the Wiretapped Act specifically provides that any person whose communications were intercepted may in a civil action recover from the person engaged in that violation and defines person as, quote, an employee or agent of the United States, and then does have the phrase appropriate relief, Your Honor, so to get back to Judge Lynch's question, and defines appropriate relief to specifically include damages and punitive damages in some cases. That's 18 U.S.C. section 2520 sub B. Again, in FISA, it's crystal clear. You can have a cause of action against any person who committed that violation and recover, quote, actual damages as well as punitive damages and defines person to mean any individual including any officer or employee of the federal government. Telecommunications Act, same thing. Congress knows how to do this. It provides that any person who willfully violates the act shall be fined. It doesn't have that language. It's not included. Your Honor, there is no presumption that it's included under appropriate relief. Not when it's against individual actors, federal employees acting in their individual capacity. There is no case, the plaintiff's site, that provides, that states in any way that Congress has to exclude those damages when it means to, and every other statute that provides for that relief includes it. What gives federal officers some exclusive immunity from a cause of action that would require Congress to have a special statement when it means to provide damages against federal officials? So it's not special immunity, Your Honor. I would just caution the court that that's not the government's position. Instead, we're looking to the Supreme Court's pronouncements in Wilkie, in Bush v. Lucas, in Harlow v. Fitzgerald, where the court has found that courts should be reluctant to evaluate and create damages remedies because of the cost, the quote-unquote cost. That's not the question I asked. The question I asked again is what is the authority for assuming that when Congress says there's a cause of action against anybody for anything, that they have to specially say damages if they mean that to apply to federal officials? Simply because of Congress's long history of passing statutes and those statutes that actually do provide for money damages against federal officials specify that. Did Congress intend in RFRA to have a cause of action for money damages against state officials? Your Honor, that's not clear at all in the text. So I would argue, although it's not before it wasn't briefed in this case, but Congress intended to restore the compelling interest standard pre-the Smith case in 1990. And pre-the Smith case in 1990, there was no First Amendment Bivens claim against federal officials acting in their individual capacity. Indeed, today there still is not a First Amendment Bivens claim. There was a 1983 claim against state actors for violation of constitutional rights, but Congress said nothing about changing any of that, changing any of the remedies available to individuals whose rights have been burdened. Instead, it provided a claim or defense to those individuals and said that they can get appropriate relief. Unlike in any other statute in which the appropriate relief includes money damages, Congress said nothing about damages. Appropriate relief is inherently vague and, as the Supreme Court has said repeatedly, to construe one phrase in one statute as meaning one thing when applied to one object, but as meaning a different thing when applied to a second object, would be to make the statute a chameleon. And relying on the Santos case, on the Red case, on — Why are we — why would we be interpreting it inconsistently within the same statute? I don't follow. Because appropriate relief has already been determined not to mean money damages when applied to every other classification. It doesn't say — no. No one interpreted it to say it doesn't mean money damages. It was interpreted to be unconstitutional to the extent it meant money damages. So the result — I'm sorry, Your Honor. But that's different than trying to understand what Congress's intention was. Congress sometimes intends to do something that's unconstitutional. That's right. And the fact remains that courts have evaluated what appropriate relief means in every other context but this one. And in every other context it has held, for whatever reason, and again, you know, it can be on sovereign immunity, it can be based on the Commerce Clause, that appropriate relief cannot constitutionally mean money damages. Cannot. So if this Court were to find — It cannot constitutionally mean money damages as to Federal officials. And that would mean adopting a construction that would attribute different meanings to the same phrase in the same sentence depending on which object it is modifying. That would be the result. And so you would find that individual FBI agents or agents at any other Federal agency could be held liable from their own pockets. Again, this is not a lawsuit against the government, as the Court well knows. It's not a lawsuit against agencies. This is against individual law enforcement officers charged with trying to protect this nation from terrorist attacks. Who have qualified immunity to provide appropriate protection. Yes, but the point— This clause of action would only apply against Federal officials who act in a way that any Federal official would understand to be a violation of people's constitutional rights. If there's any ambiguity about that, there is no liability. Yes, Your Honor, but there is still a cost to bringing that claim and a cost to the defendants of defending against that claim even if the defendants were to succeed qualified immunity. Those defendants are paying you? Substantial societal cost, Your Honor. And the societal cost is diversion of resources. Certainly it's a diversion of their resources. It's a diversion of, you know, court's resources. It's a diversion of the executive branch's resources. It's a deterrent to individuals who would otherwise potentially join public service but would be fearful of being subjected to private suit. And in particular, when individuals are sued in their individual capacity, they can get a judgment against them. They have to disclose when they are sued in their individual capacities. It's not, you know, it's not a claim that has no repercussions even if they were ultimately to prevail. Even at the initial stage of a motion to dismiss based on qualified immunity, which I would argue is very hard to make, normally you would have to go through discovery, which again, you know, subjects these officers and federal agencies and the executive branch to significant costs, and then potentially prevail at the end. That is a significant cost that the courts, again, looking at Bivens, but the principle remains the same, have suggested the courts should be wary of. Shouldn't all the costs be there if the claim were only for equitable relief? Your Honor, but it wouldn't be costs against the individual defendants, and if it were only equitable relief. You would still distract them and make them go through discovery and all that stuff you just said, right? Well, I'm just relying on the Supreme Court's rulings, Your Honor, and language, which is that when evaluating individual capacity claims, this is a consideration. And yes, of course it would distract, but that's what RFRA provided, Your Honor. RFRA provided for injunctive relief against the government. So that is what Congress told us to do. We have to defend, if we can, cases against federal officials in their official capacity. Plaintiffs would have relief. They would have the capacity to seek injunctive relief, declaratory relief, such as take me off the no-fly list, declare that I shall never be put on it again. That is the relief that Congress intended because it didn't explicitly say money damages, and it was focused on laws and policies and actions allegedly neutral towards religion, but nevertheless burdening individuals. We've got the Franklin presumption, right, which applies to implied rights of action where Congress never expressly provided a right of action at all. And here, sovereign immunity isn't an issue. So why doesn't the Franklin presumption apply? Because Franklin applies only to implied rights of actions, Your Honor, where there is, quote, no statutory text to interpret, no statutory history to look towards. If it's going to apply to implied rights of action, why wouldn't it also apply to express private rights of action? Because express private rights of action the court has as a benefit Congress's text, Congress's legislative history, Congress's stated purpose. In this case, of course, RFRA has a text. It has an express cause of action. It has an express remedy, which is appropriate relief, as ambiguous as that is. And so the Franklin presumption only applies, for example, as it did in Franklin, to Title VI, which says simply no person in the U.S. shall be denied the benefits of or be subjected to discrimination. It did not provide any cause of action, didn't provide any claim or defense, and that's where the Franklin presumption resides. So it doesn't make sense that the Franklin presumption would apply when there was only an applied cause of action as opposed to a direct cause of action. It just doesn't make sense, this interpretation. That Franklin wouldn't apply to express causes of action? It wouldn't apply here, where there is a cause of action direct under statute. Well, because the Saussman court emphasized- Different statutory scheme. Right. That Franklin addressed remedies under an implied- Spending clause. Yes, and yes. And of course, the court in Saussman was evaluating the spending clause basis for RLUIPA. But the principle is that in Franklin and in the cases after Franklin, like Gebser also evaluating Title IX and other statutes related to it, had no language in any of those statutes providing a cause of action, having a legislative text, having a legislative history. That's when Franklin applies. Here, you have a text. You have an explicit cause of action. You have an explicit purpose. Franklin presumption in this case would imply that appropriate relief covers every type of relief. That's where it would apply. Well, Your Honor, it would only apply if there were no text to interpret, just like in Title IX. The text is appropriate relief. And so appropriate relief can mean different things. And the question is- Franklin presumption says it means any kind of relief available. Well, Franklin, first of all, did not state a blanket presumption that damages are always available. I just want to be clear about that. And Gebser decided after Franklin, the Supreme Court had an occasion again to evaluate Title IX and the implied right of action and found that plaintiffs cannot always get money damages against a defendant under Title IX. So it is not the case that appropriate relief always necessarily means money damages, number one. Number two, again, Sossaman and the district court here, district courts around the country, other circuits, have looked at Franklin and decided that Franklin doesn't apply when there is an actual statutory text. Here you have not just one. You have RFRA. You have a companion statute, RLUIPA. You have legions of hearings and legislative history. Franklin applies when there is an absence of that. All right. Thank you. Thank you, Your Honor. Counsel, respond to this last argument that appropriate relief does not include- does not automatically include damages. Well, Your Honor, I'll respond to that argument by also answering Judge Lynch's earlier question about whether or not there were other statutes using the phrase appropriate relief. The Occupational Safety and Health Act uses the phrase all appropriate relief, and the First Circuit in Reich applied the Franklin presumption to that statute, although it provided an express cause of action, which goes to your point, Judge Pooler, that Franklin does not only apply to statutes with an implied cause of action, and indeed, to your point, Chief Judge Katzmann, it would make little sense for the court to be less generous where Congress has been more explicit. And I will point out that when it comes to Reich and the statute it was interpreting, OSHA, that statute provides for all appropriate relief, and it lists a couple of examples that are both forms of injunctive relief, which goes back to Judge Lynch's earlier point that the norm in our system is money damages, that the default is money damages, and the Supreme Court in Franklin makes the same point, the Supreme Court in Bivens makes the same point, that the default is money damages. There are only two additional points I'd like to make. We are not at all shying away from the Sossaman decision. We believe that the outcome we are asking this court to hold is completely consistent with Sossaman. Appropriate relief is, per Sossaman, context-dependent, and Sossaman explicitly was a case, again, and this is a direct quote, about construing the scope of an express waiver of sovereign immunity. Those are the Supreme Court's terms in Sossaman. As you yourself said earlier, it is Congress, in choosing this language, may have punted something over to the courts. So why wouldn't it be open to us to decide that damages against federal officers are just not appropriate relief for all the reasons that the district court relied on in rejecting your initial Bivens argument? Simply, Your Honor, because there would be no basis for it. When Congress enacted RFRA, it looked to 1983, which allowed for individual capacity damages, including against federal agents who colluded with state agents. And I will say there is a point that my colleague, Ms. Blaine, made that is inconsistent with how the Supreme Court says this Court is to read statutes. I mean, as Judge Pooler pointed out, the Franklin presumption here controls. But I would like to draw the Court's attention to the case of Atlantic Cleaners and Dyers, 286 U.S. 427. It's a 1932 case where the Supreme Court said, quote, where the subject matter to which the words refer is not the same in the several places where they are used, where the conditions are different, or, importantly, the scope of the legislative power exercised in one case is broader than that exercised in another, the meaning well may vary to meet the purposes of the law. So the outcome that we're advocating is not at all inconsistent with the outcome in Sossaman, and it's entirely congruent with the purpose of this statute. There is one more point I'd like to make. The Ms. Blaine listed a number of statutes, and I could point out, again, 1983, allowing for federal damages in certain cases, but the main point here is that ultimately Congress can wield its pen however it pleases. Cases like Franklin govern statutory interpretation by courts like this one, and the defendants, out of convenience, are simply conjuring up a rule out of thin air to arbitrarily protect one class of individual capacity defendants. As you pointed out, Judge Lynch, a class of individual capacity defendants that already have the powerful shield of qualified immunity, not to mention other defenses, while leaving exposed private individuals who do not have that protection. And the government is trying to pull the court back into a Bivens analysis that is completely inappropriate here, and I will point to the Supreme Court's case in Correctional Services Corporation v. Malesko, 534 U.S. 61, which distinguishes the judicially implied private right of action in Bivens from the 1983 context, which is more akin to ours, where, quote, Congress already provides for liability. We are in a different universe here. This court should resist the defendants urging to go back into a Bivens analysis which would be inappropriate in the RFRA context. Thank you. Thank you both for your arguments. The court will reserve decision.